### EDMUND TARBELL *vs.* ELIZA A. TARBELL.

An ante-nuptial contract by which a woman agrees to relinquish her distributive share of her intended husband's estate will be enforced in equity, if entered into understandingly for an adequate consideration, and without fraud or misrepresentation on his part.

BILL IN EQUITY brought by the executor of the will of Abel Tarbell, late of Groton, deceased, to restrain his widow from making any claim for dower or her distributive share of his estate, upon the ground that they, on the 28th of August 1858, being in contemplation of marriage, made an agreement, reciting the contemplated marriage, and that said Abel, in consideration thereof, and in order to preclude her from " claiming any allowance or interest as his wife in his personal estate after his decease," had made over to her certain shares in a corporation, of the value of one thousand dollars, to have and to hold as her separate property forever, which she had accepted in full satisfaction of any claim to dower and to an allowance or interest in his personal estate after his decease ; and providing that all her property should be her sole and separate property during such marriage ; that she should have full right to convey the same during her life or dispose thereof by will without his assent in writing, that he would treat her as a faithful and affectionate husband; that she would well and faithfully live with him during his life, and would within a reasonable time after his death surrender up and deliver to his executors, administrators, heirs, egatees and devisees all his real and personal estate of every name and description, and not claim dower in any of his real estate or any allowance from his personal estate, in any manner or form whatever.

The bill alleged that the agreement was duly executed ; that the recitals therein were true ; that the parties were shortly after married to each other ; that said Abel faithfully performed his part of the agreement; that the agreement was in all respects fair ; that said Abel was eighty-four years old ; that she was of middle age ; that he died on the 19th of October 1860 ; that she

has applied to have her dower set off to her, **and also** to have an allowance made to her for her distributive share of his estate and the prayer was that she might be restrained from prosecuting her said petitions.

The answer, which was under oath, set forth that said Abel, several days before the marriage, delivered to her the shares referred to as a present, without in any way intimating that any conditions were annexed to her acceptance of them ; that on the day of the marriage, and just before the solemnization thereof, he presented to her a paper for her signature, saying that as he had given to her the shares it was well to have some writing to show for it; that she did not read the paper, nor was it read to her; that she did not suppose that it had any other effect than to acknowledge the receipt of the shares as a gift ; that she was under great excitement of mind, and had no time for examination of the paper or consultation with her friends, and relied wholly upon the truth of his statement ; that said paper has not the effect to deprive her of her claim to dower and a distributive share of his estate ; that at the time of the marriage his collateral relatives took no care of him; that by her marriage to him she assumed to devote herself wholly to him, and to give her time and strength to a constant and faithful attendance upon him ; to deprive herself of all personal pleasure and happiness, and to expose herself to odium and ridicule.

Evidence was taken as to the circumstances under which the contract was executed, and of other facts which it is not necessary to state here ; and the case was reserved for the determination of the whole court.

*G. O. Shattuck & G. Putnam, Jr.*, for the plaintiff, cited *Sullings* v. *Richmond*, 5 Allen, 187, and cases cited ; 2 Story on Eq. §§ 1370, 1371, and cases cited ; *Drury* v. *Drury*, 2 Eden R. 60 ; *Dyke* v. *Rendall*, 2 De G., Macn. & Gord. 209 ; *Druce* v. *Denison*, 6 Ves, 385 ; *Gurly* v. *Gurly*, 8 Clark & Fin. 743 ; *M' Cartee* v. *Teller*, 2 Paige, 511.

*J. G. Abbott*, for the defendant, contended that the evidence was insufficient to prove that she had understandingly signed the contract, and that under the statutes of Massachusetts a

**woman** cannot bar herself by an ante-nuptial contract of her dis
tributive share in her husband's estate. Gen. Sts. *c.* 108, § 3.
The policy of the law is against enforcing such a contract
Neither party can have any data upon which to act understand-
ingly. It cannot be known how large an amount the woman is
to bar herself of; how much she will contribute to the fund
how long she may be compelled to devote herself to his comfort;
or which will die first. Besides ; a wife should not be allowed
to enter into a contract by which she may be thrown upon the
world, perhaps as a pauper, if her husband leaves property.
This contract was an extraordinary one ; it was not only for the
purchase of a wife, but a purchase with covenants of warranty.
She had to agree that she would behave herself well.

HOAR, J. The principles upon which a court of equity pro-
ceeds in enforcing the specific peformance of an ante-nuptial
contract, by which a married woman agrees to relinquish any
distributive share of her husband's estate, were stated by this
court in *Sullings* v. *Richmond,* 5 Allen, 187. The validity of
such a contract was fully recognized; but it was held that the
remedy upon it was not in the court of probate.

The defendant now insists that she never gave an intelligent
assent to the contract which the plaintiff seeks to enforce; but
we think the evidence to the contrary plenary and conclusive.
We find no reason to doubt that she entered into the agreement
with a full understanding of its force and effect; that it was
made without fraud or misrepresentation on the part of her hus-
band ; was a reasonable one under all the circumstances, sup-
ported by an adequate consideration, and that it has been fully
performed on his side. There is nothing in the case to show
that the original equities in favor of the legatees under the hus-
band's will have changed. The authorities cited for the plaintiff
are abundant to show that in such a case it is the rule and the
duty of a court of equity to enforce the performance of the con·
tract. *Decree for the plaintiff with costs.*